1  JAMES C. STURDEVANT (SBN 94551)
   (jsturdevant@sturdevantlaw.com)
2  MARK T. JOHNSON (SBN 76904)
   (mjohnson@sturdevantlaw.com)
3  ALEXIUS MARKWALDER (SBN 227004)
   (amarkwalader@sturdevantlaw.com)
4  THE STURDEVANT LAW FIRM
   A Professional Corporation
5  475 Sansome Street, Suite 1750
   San Francisco, CA  94111
6  Telephone:  (415) 477-2410
   Facsimile:  (415) 477-2420
7
   RANDALL P. CHOY (SBN 83194)
8  (rchoy@hedanichoy.com)
   HEDANI, CHOY, SPALDING & SALVAGIONE, LLP
9  595 Market Street, Ste. 1100
   San Francisco, CA 94105
10 Telephone:  (415) 778-0800
   Facsimile: (415) 778-0700
11
   Attorneys for Plaintiff

12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16  HEROES CLUB, INC., a California Corporation, | **CASE NO.    CV  07-04422-JCS** |
| 17                          Plaintiff, | <u>**CLASS ACTION**</u> |
| 18         v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| 19  UNITED PARCEL SERVICE, INC., and DOES 1-50, | Date:         February 8, 2008 |
| 20 | Time:         9:30 am |
| 21                          Defendants. | Courtroom:   A, 15th Floor |
| 22 | Complaint filed: July 27, 2007 Trial date: None set |

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     THE STANDARD FOR A MOTION FOR JUDGMENT
       ON THE PLEADINGS IS A HIGH STANDARD THAT
       DEFENDANT CANNOT OVERCOME. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW. . . . . . . . . . 6

       A.     The Legislative History of the Preemption
              Provisions Evidence Congress' Intent to
              Prohibit Only Those State Law Claims That
              Have An Economic Impact on "Price, Route, or Service." . . . . . . . . . . . . . . . 7

       B.     None of Plaintiff's Claims Should Be Dismissed
              on Preemption Grounds Because They Are Too
              Tenuously Connected to "Price, Route, or Service"
              to Impact Economic Deregulation in the Manner
              Congress Intended to Prohibit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.     Because None of Plaintiff's Claims are Preempted,
              His Claims For Damages Should Not Be Dismissed. . . . . . . . . . . . . . . . . . . 14

II.    THE 180-DAY NOTICE REQUIREMENT DOES NOT APPLY
       TO PLAINTIFF'S CLAIMS AND, EVEN IF APPLICABLE,
       WOULD ONLY BAR AN UNDETERMINED PORTION
       OF HIS CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       A.     The 180-day Statutory Notice Provision is Inapplicable
              Where, As Here, the Forum is a Court Rather than An
              Administrative Body. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       B.     The 180-day Statutory Notice Provision is Also Inapplicable
              Here Because Plaintiff's Claim Does Not Arise From a
              Dispute Over a Rate UPS Charges For a Service. . . . . . . . . . . . . . . . . . . . . . 20

       C.     UPS's Motion Based on the 180-day Contractual Notice
              Provision Must Be Denied Because It Improperly Relies
              Upon Extraneous Documents Which Are Neither Relied
              Upon by Plaintiff Nor Integral to Their Claims. . . . . . . . . . . . . . . . . . . . . . 21

       D.     It is Premature to Determine the Extent to Which the Claims
              Are Not Barred Even if a 180-day Notice Provision Applies. . . . . . . . . . . . . 22

III.   DEFENDANT'S ARGUMENT THAT PLAINTIFF'S BREACH
       OF CONTRACT CLAIMS ARE TIME-BARRED IS NO MORE
       AVAILING WHEN BASED ON THE 18-MONTH STATUTE
       OF LIMITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3   *In re Air Crash Disaster at Sioux City, Iowa*,
        734 F. Supp. 1425 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
4
    *In re Air Crash Disaster at Stapleton International Airport*,
5       721 F. Supp. 1185 (D. Colo. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6   *In re Air Transport Excise Tax Litigation*,
        37 F. Supp. 2d 1133 (D. Minn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13
7
    *American Airlines, Inc. v. Wolens*,
8       513 U.S. 219 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

9   *Avery Dennison Corp. v. Con-Way Transport Services, Inc.*,
        No. 2005-L-218, 2006 WL. 3350761 (Ohio App. 11 Dist. Nov. 17, 2006) . . . . . . . . 2, 20
10
    *Barber Automobile Sales, Inc. v. United Parcel Services, Inc.*,
11      494 F. Supp. 2d 1291 (N.D. Ala. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

12  *Brownstein v. American Airlines*,
        No. C-05-3435 JCS, 2005 WL 2988720 (N.D. Cal. Nov. 7, 2005) . . . . . . . . . . . . . . . . 13
13
    *California v. ARC America Corp.*,
14      490 U.S. 93 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15  *Carsten v. United Parcel Serv. Inc.*,
        No. Civ. S-95-862 WBS-JFM,
16      1996 WL 335421 (E.D. Cal. Mar. 26, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

17  *Charas v. Trans World Airlines*,
        160 F.3d 1259 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9, 10
18
    *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,
19      536 U.S. 424 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20  *Davis v. Michigan Department of Treasury*,
        489 U.S. 803 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
21
    *Deal  v. United States*,
22      508 U.S. 129 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

23  *Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc.*,
        972 F. Supp. 665 (N.D. Ga. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
24
    *EIJ, Inc. v. United Parcel Serv., Inc.*,
25      No. CV 03-7301 CBM (JWJx),
        2004 U.S. Dist. LEXIS 18481 (C.D. Cal. Sep. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 13
26
    *Farmers' & Mechanics' National Bank v. Dearing*,
27      91 U.S. 29 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28

ii

*General Conference Corp. of Seventh-Day Adventists v.*
*Seventh-Day Adventist Congregational Church,*
    887 F.2d 228 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Grove v. Mead School District No. 354,*
    753 F.2d 1528 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
    896 F.2d 1542 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hodges v. Delta Airlines, Inc.,*
    44 F.3d 334 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holmstrom v. United Parcel Service, Inc.,*
    No. EDCV 02-00683-VAP (SGLx),
    2002 U.S. Dist. LEXIS 26617 (C.D. Cal. Sep. 18, 2002) . . . . . . . . . . . . . . . . . . . . . . . 13

*In re EVIC Class Action Litig.,*
    No. 02-CV-2703 (RMB),
    2002 WL 1766554 (S.D.N.Y. Jul. 31, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kelly v. Robinson,*
    479 U.S. 36 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mastercraft Interiors, Ltd. v. ABF Freight System, Inc.,*
    284 F. Supp. 2d 284 (D. Md. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mastercraft Interiors, Ltd. v. ABF Freight System, Inc.,*
    350 F. Supp. 2d 686 (D. Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Metropolitan Life Insurance Co. v. Massachusetts,*
    471 U.S. 724 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Montalvo v. Spirit Airlines,*
    No. 05-15640, 2007 WL 3311995 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14

*Mostowy v. United States,*
    966 F.2d 668 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*O'Shaughnessy v. Commissioner Internal Revenue,*
    332 F.3d 1125 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Peterson v. Continental Airlines, Inc.,*
    970 F. Supp. 246 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

*Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.*,
    485 U.S. 495 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Qwest Communications Corp. v. City of Berkeley*,
    208 F.R.D. 288 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*R.J. Corman Derailment Services, LLC v. International Union*
    *of Operating Engineers Local 150*,
    335 F.3d 643 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rennie & Laughlin, Inc. v. Chrysler Corp.*,
    242 F.2d 208 (9th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rockwell v. United Parcel Serv., Inc.*,
    No. 99-CV-57, 1999 WL 33100089 (D. Vt. Jul. 7, 1999) . . . . . . . . . . . . . . . . . 12

*Somes v. United Airlines, Inc.*,
    33 F. Supp. 2d 78 (D. Mass. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stephan v. Trans World Airlines, Inc.*,
    730 F. Supp. 366 (D. Kan. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Taisho Marine & Fire Insurance Co., Ltd. v. The Vessel "Gladiolus,"*
    762 F.2d 1364 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
    164 F.3d 186 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
    73 F.3d 1423 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Unimac Co., Inc. v. C.F. Ocean Serv., Inc.*,
    43 F.3d 1434 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United Parcel Serv., Inc. v. Flores-Galarza*,
    318 F.3d 323 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Morton*,
    467 U.S. 822 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vieira v. United Parcel Serv. Inc.*,
    No. C-95-04697 CAL ARB, 1996 WL 478686
    (N.D. Cal. Aug. 5, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*W. Parcel Express v. United Parcel Serv. of America, Inc.*,
    No. C 96-1526 CAL,
    1996 WL 756858 (N.D. Cal. Dec. 3, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wardair Canada, Inc. v. Florida Department of Revenue*,
    477 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iv

*Wellons v. Northwest Airlines, Inc.*,
        165 F.3d 493 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Williams v. Federal Express Corp.*,
        No. CV 99-06252 MMM BQRX,
        1999 WL 1276558 (C.D. Cal. Oct. 6, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

### STATE CASES

*Power Standards Laboratories, Inc., v. Federal Express Corp.*,
        127 Cal. App. 4th 1039 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### FEDERAL STATUTES

49 C.F.R.
        § 378.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

49 U.S.C.
        § 1305(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 13102(12)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        § 13103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        § 13702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        § 13702(a)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        § 13710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18
        § 13710(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        § 13710(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        § 13710(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim
        § 14101(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19
        § 14501(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 14704(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        § 14705(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23, 24
        § 41713(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 41713(b)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Airline Deregulation Act of 1978,
        Pub. L. No. 95-504, 92 Stat. 1705 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Aviation Administration Authorization Act of 1994,
        Pub. L. No. 103-305, 108 Stat. 1569 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### STATE STATUTES

Cal. Civ. Proc. Code
        § 337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

### OTHER AUTHORITIES

*Carolina Traffic Services, Inc. of Gastonia - Petition for Declaratory Order*,
        STB No. 41689, 1996 WL 303722 (May 31, 1996) . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

H.R. Conf. Rep. No. 103-677 (1994),
        *reprinted in* 1994 U.S.C.C.A.N. 1715, 1754 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

v

*Interstate Commerce Comm'n: Hearing before the S. Commerce,*
    *Science and Transp. Comm., Subcomm. on Surface Transp.*,
    103rd Cong., 1994 WL 369290 (1994)
    (statement of Thomas J. Donohue, President and Chief Executive Officer
    of the American Trucking Association) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*National Association of Freight Transport Consultants, Inc.*
    *- Petition for Declatory Relief,*
    STB No. 41826, 1997 WL 189658 (April 21, 1997) . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*Policy Statement on the Trucking Industry Regulatory Reform Act of 1994*,
    10 I.C.C.2d 251, 1994 WL 580904 (Oct. 20, 1994) . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*State Motor Carrier Laws:  Hearing on S. 1491 before the*
    *H. Public Works and Transportation Committee, Subcommittee On Surface Transp.*,
    103 Cong., 1994 WL 377959 (1994)
    (statement of James A. Rogers, Vice President of United Parcel Service) . . . . . . . . . . . 8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. CV 07-04422-JCS

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant in this action, United Parcel Service, Inc. ("UPS"), is a company engaged in the business of providing shipping and related services to businesses and individuals in California and elsewhere.  (Compl. ¶¶ 3, 14-15.)  Plaintiff Heroes Club, Inc., a small business in San Francisco, used UPS to ship hero-themed figurines, toys, and other items for the collector and hobbyist.  (*Id.* at ¶¶ 1, 13.)  By this action, plaintiff challenges a widespread, fraudulent and unfair business practice engaged in by UPS.  Specifically, when promising to obtain the signature of the recipients of the packages it ships as a means of delivery confirmation, and charging a separate fee for doing so, it fails to actually obtain such signatures.  (*See id.* at ¶¶ 14-21, 24-30.)

UPS brings this motion based on its arguments that plaintiff's claims are either preempted or time-barred.  UPS is wrong on both counts.

UPS's first argument, that federal law preempts plaintiff's state law claims, completely ignores the Congressional intent underlying the law – a necessary consideration when assessing preemptive effect.  The Supreme Court has cautioned that preemption provisions are narrowly and strictly construed and has directed courts to look to "the provisions of the whole law, and to its object and policy" in deciphering the extent of preemption.  *Kelly v. Robinson*, 479 U.S. 36, 43 (1986).  "In all pre-emption cases, and particularly those in which Congress has legislated . . . in a field which the States have traditionally occupied, . . . [the court must] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citation and internal quotations omitted).  It was not Congress's intent in its enactment of the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (1978) (the "ADA") or the Federal Aviation Administration Authorization Act of 1994, Pub. L. No. 103-305, 108 Stat. 1569 (1994) (the "FAAAA") to preempt all state and/or common law tort claims against carriers.  Rather, Congress intended only to preempt state laws, rules or regulations which could interfere with the air and motor carrier deregulation scheme.  By the language of the Act itself, as well as its legislative history, the goals of the legislation, including

1

1   the preemption provision, were purely economic.  Nowhere in either the law itself or in the

2   legislative history is there any reference to an intent to preempt state law claims that do not

3   impact the competitive market.

4         In the leading preemption case in the Ninth Circuit involving the ADA, the court took

5   very seriously the Supreme Court's directive to assess the legislative history and set forth the

6   framework in which all future carrier (air and motor) preemption cases within this Circuit should

7   be viewed.  *Charas v. Trans World Airlines,* 160 F.3d 1259, 1263-66 (9th Cir. 1998).  That is,

8   claims shall not be preempted based upon the label alone but rather the impact of the law on the

9   intent to deregulate the carriers and foster competition in the market.  The court thus found

10   multiple tort claims too tenuously related to the goals set forth in the ADA to be preempted.

11   Within this framework, plaintiff's tort and consumer protection law claims should not be

12   dismissed on preemption grounds because they are too tenuously related to the economic

13   deregulation Congress sought to achieve in the ADA and FAAAA.  Plaintiff's claims simply

14   seek a remedy for UPS's fraudulent conduct entailing collection of fees for services it did not

15   provide.  The Complaint does not dispute the applicability or reasonableness of the rate, the

16   commodities UPS carries, or any other economic regulation targeted by Congress.  Moreover, to

17   the extent UPS's conduct impacts its competitiveness in the market, it is certainly not the kind of

18   legitimate competition Congress intended to foster.

19         UPS also argues that plaintiff's claims are time barred because under 49 U.S.C.

20   § 13710(a)(3)(B) and UPS's interpretation of the contract, plaintiff was required to give notice of

21   his claims to UPS within 180 days of billing.  The statutory notice provision does not apply here,

22   however.  The contention that it does, ignores the privately enforceable rights under which

23   plaintiff filed his claim and attempts to focus the Court's attention on a narrowly framed

24   statutory provision that is ill-suited to the kind of unlawful conduct at issue here.  Historically, it

25   is only "billing disputes" that are subject to section 13710(a)(3)(B), *i.e.*, disputes involving the

26   applicability or reasonableness of independently determined rates.  *See, e.g.*, *Avery Dennison*

27   *Corp. v. Con-Way Transp. Servs., Inc.*, No. 2005-L-218, 2006 WL 3350761, at *4 (Ohio App. 11

28   Dist. Nov. 17, 2006) (applying the 180-day notice rule to a dispute over a pricing agreement,

1   wherein the parties agreed to a particular arrangement and just weeks after that agreement, the

2   rates charged by defendant were higher than the agreed rates).  Plaintiff does not challenge

3   whether UPS's rates were reasonable or whether UPS properly applied the correct rate to a

4   particular shipment, but instead the failure to provide a service for which it promised in

5   exchange for a fee paid by plaintiff.  Therefore, plaintiff's state law claims do not constitute a

6   "billing dispute" that arises under section l3710 and are not barred by the 180-day notice

7   provision provided for in that section.

8        UPS's arguments that plaintiff's claims are time barred based upon specific contractual

9   provisions improperly relies on evidence extraneous to the Complaint which should therefore be

10  disregarded in a Federal Rules of Civil Procedure, rule 12(c) motion for judgment on the

11  pleadings.  Plaintiff's breach of contract claim is not based upon the UPS rate schedules and

12  other documents which UPS presents to the Court via counsel's declaration without

13  authentication or a basis for judicial notice.  It is based upon the contract formed by the shipping

14  record books and the forms therein that plaintiff completed and provided to UPS with each

15  package UPS accepts for delivery.  Further, even if the Court defines the contract according to

16  UPS's extraneous documents, which it should not, the extent to which the claims are barred will

17  be based on fact-based inquiries, including but not limited to, the kind of notice required,

18  whether and when plaintiff was required to give notice, and whether he, in fact, gave notice.

19  Accordingly, it is premature at this time to dismiss plaintiff's claims based upon contractual

20  notice requirements given that plaintiff has had no opportunity to conduct discovery necessary to

21  refute UPS's notice defense.

22       Finally, plaintiff's claims are not time-barred under the overcharge statute of limitations

23  and its accompanying regulations upon which UPS relies, 49 § U.S.C. 14705(b),  because

24  overcharges are a subset of "billing disputes" described above, and, as a matter of law, have no

25  applicability here.  Similar to  "billing disputes," overcharge claims normally arise out of

26  computational errors on a freight bill, application of an incorrect rate or wrong tariff, and

27  erroneous mileage or weight measurements.  These kinds of errors generally involve nothing

28  more than a misapplication of a valid tariff or rate formula, not a violation of the kind here.

1   Indeed, a vast difference exists between UPS's consistent and unlawful failure to provide a

2   service for which plaintiff paid and a simple overcharge claim.  Further, the statute of limitations

3   applies only to filed tariffs related to the transportation of household goods or for shipments

4   moving in noncontiguous domestic trade (land and water), neither of which include UPS's

5   conduct at issue here.  There is simply no statutory authority for the notion that Congress

6   intended to apply the federal statute of limitations for overcharge claims to the state claims

7   before this Court.  Even if this statute applied, at a maximum it limits, not eliminates, plaintiff's

8   claims and the extent to which those claims are limited cannot be determined on the pleadings.

9                           **BACKGROUND AND PROCEDURAL HISTORY**

10          On July 27, 2007, Plaintiff Heroes Club, Inc. filed this class action suit in San Francisco

11  Superior Court on behalf of itself and all similarly situated businesses in California.  Plaintiff

12  alleges that UPS advertises and offers to class members an "Additional Service" known as

13  "Delivery Confirmation/Signature Required" whereby UPS will obtain, as a condition of

14  delivery and at an additional cost, the signature of the person to whom an item is shipped.

15  (Compl. at 1:5-8 & ¶¶ 14, 17, 24, 40, 41, 56.)  This service, when actually implemented,

16  provides businesses with the ability to establish the actual receipt of merchandise by the intended

17  recipient and protects retailers from fraud and losses associated with stolen packages left at the

18  premises. (*Id.* at 1:8-11.)  Although UPS charges class members an additional fee for each

19  package for which delivery confirmation with a signature is required, it routinely delivers

20  packages without obtaining signatures despite the customer's indication that a signature is

21  required, and regularly charges customers for the signature required service even though no

22  signature has been obtained.  (*Id.* at 1:11-15 & ¶¶ 18-21, 25-30, 42-43, 51, 58, 62.)  In such

23  circumstances, UPS offers no refund or credit to class members and retains the full amount

24  charged as profit.  (*Id.* at 1:15-18 & ¶¶ 19, 22, 32, 36, 45, 51.)  Plaintiff, on behalf of himself and

25  the putative class, seeks damages for fraud, negligent misrepresentation, and breach of contract

26  in the "amounts paid by them for the service."  (*Id.* at ¶¶ 32-33, 36, 45.)  In addition, the

27  Complaint seeks restitution of "all fees paid for the service," declaratory and injunctive relief

28  pursuant to California Business and Professions Code sections 17200 and 17500, and attorneys'

1   fees.  (*Id.* at ¶¶ 52-54, 62-64.)

2        On August 27, 2007, UPS filed a Notice of Removal to this Court pursuant to 28 U.S.C.

3   § 1441 based on jurisdiction arising from the Class Action Fairness Act of 2005, 28 U.S.C.

4   § 1332(d).  (Docket #1.)  Therein, UPS asserted, according to its records, that it had 319,725

5   business or professional accounts in California and, during the relevant time period, these

6   accounts requested UPS's delivery confirmation signature service in connection with 29,358,523

7   packages.  One day after filing its Notice of Removal, defendant filed its Answer to the

8   Complaint in the Northern District of California.  (Docket #4.)

9        On November 6, 2007, this Court ordered the initial Case Management Conference,

10  which was originally scheduled to occur on November 30, 2007, to be re-set for December 14,

11  2007.  (Docket #14.)  The parties have yet to hold their Federal Rules of Civil Procedure, rule

12  26(f) conference and therefore have not conducted any discovery.

13       Defendant filed the instant motion on November 9, 2007.  (Docket # 15-18.)  On

14  November 14, 2007, the Court issued a notice, which set the briefing schedule on this motion

15  and re-set the initial Case Management Conference for the same day as the hearing on the instant

16  motion, *i.e.*, February 8, 2008.  (Docket # 19.)

**ARGUMENT**

17

18  **I.     THE STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS IS
           A HIGH STANDARD THAT DEFENDANT CANNOT OVERCOME.**

19

20       Like a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6), a motion

21  for judgment on the pleadings pursuant to Rule 12(c) must be denied "unless it appears to a

22  certainty that plaintiff is entitled to no relief under any state of facts . . . which could be proved

23  in support of his claim."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542,

24  1550 (9th Cir. 1989) (defendant must establish that "that no material issue of fact remains to be

25  resolved and that it is entitled to judgment as a matter of law"); *Mostowy v. United States*, 966

26  F.2d 668, 672 (Fed. Cir. 1992) (citation and internal quotations omitted) (noting standard is

27  "stringent"); *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002)

28  (noting standard same under Rule 12(b)(6) and Rule 12(c)).  A court must assume the

1  truthfulness of the material facts alleged in the complaint and construe all inferences reasonably

2  drawn from these facts in favor of the responding party. *Gen. Conference Corp. of Seventh-Day*

3  *Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989);

4  *Hal Roach Studios*, 896 F.2d at 1550. Defendant is not entitled to judgment if the complaint

5  raises issues of fact which, if proven, would support recovery. *Gen. Conference Corp.,* 887 F.2d

6  at 230.

7          In addition, the courts may only consider the facts stated within the four corners of the

8  complaint. Courts may not examine any external facts, unless they are facts that are subject to

9  judicial notice under Federal Rules of Evidence, rule 201. *Lee v. City of L.A.*, 250 F.3d 668, 688

10  (9th Cir. 2001); *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs Local*

11  *150*, 335 F.3d 643, 647 (7th Cir. 2003). Finally, the law prefers resolution on the merits and that

12  cases be "tried on the proofs rather than the pleadings." *Rennie & Laughlin, Inc. v. Chrysler*

13  *Corp.*, 242 F.2d 208, 213 (9th Cir. 1957). Thus, if the Court is inclined to grant defendant's

14  motion, in whole or in part, plaintiff requests leave to amend his Complaint.

15  **II.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW.**

16          UPS has moved to dismiss plaintiff's state law tort and Unfair Competition Law ("UCL")

17  claims and accompanying relief in their entirety, arguing that 49 U.S.C. § 41713(b)(4)(A) of the

18  ADA and 49 U.S.C. § 14501(c)(1) of the FAAAA preempt any claim arising from state law.

19  While the first provision governs motor carriers and the second provision governs air carriers,

20  both provide for preemption of any state "law, regulation, or other provision having the force

21  and effect of law related to a price, route, or service."[1]

22          In determining whether a federal statute preempts all state law claims, it is necessary to

23  engage in a close examination of Congressional intent. Courts have repeatedly emphasized the

24  fact that the intent of Congress is controlling in preemption cases. *Wardair Can., Inc. v. Fla.*

25

26  ───────────────

27  [1]      When Congress first enacted 49 U.S.C § 1305(a)(l) of the ADA, now codified at 49 U.S.C. § 41713(b)(l), it used the term "rates, routes, or services." However, when the law was amended, Congress used the term "price, route, or service." *See* 49 U.S.C. § 14501(c)(1), 49 U.S.C § 41713(b)(4)(A). No difference attaches to the change in language from "rates" to "price." Therefore, for purposes of clarity herein, plaintiff uses the term "price, route, or service."

28

6

1   *Dep't of Revenue*, 477 U.S. 1, 6 (1986); *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 738 (1985).

2   Furthermore, when Congress legislates in an area traditionally relegated to the states, such as

3   common law actions for negligence, there is a strong presumption against preemption of state

4   law. *Puerto Rico Dept. of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 500 (1988).

5   This presumption can only be overcome by demonstrating a clear and manifest congressional

6   purpose. *Cal. v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). Thus, in attempting to decipher the

7   precise dimensions of preemption in the ADA and the FAAAA, this Court must first look to the

8   statute itself and "attempt to ascertain and give effect to the plain meaning of the language used."

9   *Charas*, 160 F.3d at 1264 (internal quotations omitted). In so doing, it is necessary to "look to

10  the provisions of the whole law, and to its object and policy." *Id.* (internal quotations omitted).

11          **A.      The Legislative History of the Preemption Provisions Evidence Congress'**
12          **Intent to Prohibit Only Those State Law Claims That Have An Economic**
            **Impact on "Price, Route, or Service."**

13          There can be no dispute that the preemption provisions upon which UPS relies were

14  solely intended to preempt those claims that interfere with economic deregulation of the airline

15  industry, not to entirely excuse carrier liability, as UPS urges here. With regard to the

16  preemption of claims against air carriers, the Ninth Circuit has stated "[i]t is evident that

17  Congress's clear and manifest purpose in enacting the ADA was to achieve . . . the economic

18  deregulation of the airline industry. Specifically, the ADA . . . was designed to promote

19  maximum reliance on competitive market forces." *Charas*, 160 F.3d at 1265 (citation and

20  internal quotations omitted). The court further clarified that "[n]othing in the Act itself, or its

21  legislative history, indicates that Congress had a clear and manifest purpose to displace state tort

22  law in actions that do not affect deregulation in more than a peripheral manner." *Id.* (citation

23  and internal quotations omitted).

24          The preemption language of the FAAAA is identical to that of the ADA. Moreover, the

25  Congressional record reveals that the intent of the FAAAA was to foster competition among all

26  carriers for the business of transport of property by "as completely as possible level[ing] the

27  playing field between air carriers . . . and motor carriers . . . ." H.R. Conf. Rep. No. 103-677, at

28  82 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1754. Congress sought to accomplish this goal

1   through the preemption of the states' economic regulation of motor carriers under the FAAAA,

2   so that the motor carriers would be treated exactly as the air carriers had been treated under the

3   ADA. *Id.* at 82-85. Prior to the FAAAA, many states had a variety of economic entry and

4   commodity controls that effectively related to "price, route or service," which protected certain

5   carriers and discouraged new applicants for carriage thereby stifling competition. *Id.* at 86. In

6   particular, as identified at the congressional hearings, these economic laws included entry

7   controls governing the types of commodities and the exact cities to which such commodities

8   could be transported, tariff filing requirements, and price regulation. *Id.*; *see also State Motor*

9   *Carrier Laws: Hearing on S. 1491 before the H. Public Works and Transp. Comm., Subcomm.*

10   *On Surface Transp.*, 103 Cong., 1994 WL 377959, at 2-3 (1994) (statement of James A. Rogers,

11   Vice President, United Parcel Service) ("Rogers Testimony") (UPS "must . . . get state approval

12   in order to change a service offering," and "could offer only those services that [the state]

13   approved"). Congress recognized that "[s]uch [economic] regulation is usually designed to

14   ensure not that prices are kept low, but that they are kept high enough to cover all costs and are

15   not so low as to be 'predatory.'" H.R. Conf. Rep. No. 103-677, at 87.

16         At bottom, "[t]he problem to which the congressional conferees [for the FAAAA]

17   attended was 'state *economic* regulation.'" *City of Columbus v. Ours Garage & Wrecker Serv.,*

18   *Inc.*, 536 U.S. 424, 440 (2002) (emphasis in original). The proponents of the law agreed with the

19   conferees as evidenced by their repeated and exclusive explanation of the problem as the

20   various types of state economic laws that limited competition by regulating intrastate prices,

21   routes, and services of motor carriers. For instance, Thomas V. Donahue, President and Chief

22   Executive of the American Trucking Association, testified in favor of preempting "state

23   economic regulation," advocating that it would allow "states to continue to regulate non-rate or

24   economic entry factors" and "non-economic aspects of state regulation." *Interstate Commerce*

25   *Comm'n: Hearing before the S. Commerce, Science and Transp. Comm., Subcomm. on Surface*

26   *Transp.*, 103rd Cong., 1994 WL 369290, at 1, 3 (1994) (statement of Thomas J. Donohue,

27   President and Chief Executive Officer of the American Trucking Association). Even UPS

28   testified that it supported preemption of state "economic regulation" such as rates and entry

1   restrictions.  *See* Rogers Testimony, *supra*, 1994 WL 377959, at 2.  There is not a shred of

2   evidence in the Congressional record that the FAAAA was intended to preempt all state

3   governance.  To the contrary, the legislative history is overwhelmingly one-sided and supports

4   the conclusion that Congress's sole purpose was to preempt those state economic regulations that

5   are "related to" and therefore interfere with competitive market forces thereby providing the

6   same playing field to motor carriers under the FAAAA as that for air carriers under the ADA.

7   Because "as always, [the Court] must keep in mind that Congress' intent is the ultimate

8   touchstone of every preemption case," *Montalvo v. Spirit Airlines*, No. 05-15640, 2007 WL

9   3311995, at * 7 (9th Cir. 2007) (citing *Charas*, 160 F.3d at 1265), it must consider here whether

10  allowing plaintiff to pursue his claims would violate Congressional intent.

> **B.      None of Plaintiff's Claims Should Be Dismissed on Preemption Grounds Because They Are Too Tenuously Connected to "Price, Route, or Service" to Impact Economic Deregulation in the Manner Congress Intended to Prohibit.**

14          In light of the clear legislative intent behind the preemption provisions of the ADA and

15  FAAAA, a claim against a carrier, such as UPS, is preempted only where the state law or

16  regulation under which a plaintiff brings the claim would frustrate the economic goal of

17  deregulation.  Thus, courts have held that state law claims having a significant economic effect

18  are preempted because they are related to "price, route, or service."  *See Charas*, 160 F.3d at

19  1263; *Montalvo*, 2007 WL 3311995, at * 8; *Travel All Over the World, Inc. v. Kingdom of Saudi

20  *Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996).  Plaintiff's claims here, all of which arise from

21  UPS's failure to provide a service for which plaintiff paid, would not have the kind of economic

22  impact Congress intended to prohibit via preemption.

23          The first Supreme Court case addressing the issue of whether a claim is "related" to

24  "price, route, or service," and therefore preempted, did so under the ADA.[2]  *Morales v. Trans*

---

[2]       UPS relies in large part on a second Supreme Court opinion, *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).  In that case, the Court summarily concluded that plaintiff's claims "related to a price . . . [and] service" and then set forth and analyzed in detail the second prong of preemption (*i.e.*, that the claim be brought under a state law or regulation).  *Id.* at 226-30.  Plaintiff herein disputes the first prong discussed in detail in *Morales* for which *Wolens* provides little guidance or analysis.

9

1   *World Airlines, Inc.* 504 U.S. 374, 390 (1992).  In *Morales,* the Supreme Court recognized that

2   while Congress intended broad preemption, it explicitly held that preemption is not total.  *Id.*; *see*

3   *also Somes v. United Airlines, Inc.*, 33 F. Supp. 2d 78, 84 (D. Mass. 1999) ("Congress did *not*

4   intend to displace . . . all tort actions arising under state law") (emphasis in original).  In

5   interpreting the precise reach of preemption within the scope of Congress's intent to provide for

6   economic deregulation, the Court held that state actions may have some effect on "price, route,

7   or service" and nevertheless cannot be preempted if the manner in which the particular action

8   affects "price, route, or service" is "too tenuous, remote or peripheral."  *Morales*, 504 U.S. at

9   390; *Travel All Over the World*, 73 F.3d at 1432 (whether claims are "related to price, route or

10  service" requires that they have "a significant economic effect upon them").  Thus, *Morales*

11  precludes generalizations of the sort which UPS urges upon this Court.  A claim cannot simply

12  be preempted because it is labeled a tort or, for that matter, anything other than a breach of

13  contract (which is clearly not preempted under *Wolens*, 513 U.S. 219).  What *Morales* requires is

14  that any claim arising under state law be individually assessed to determine whether enforcement

15  of that law would impermissibly impact "price, route, or service" thereby interfering with

16  competitive market forces.  *Id.*

17      Numerous courts since *Morales* have followed the Supreme Court's guidance by

18  evaluating the impact of enforcing the state law claim rather than performing the kind of facial

19  analysis that UPS mistakenly seeks here.  *See, e.g.*, *Charas*, 160 F.3d at 1259.  When conducted

20  in accordance with *Morales*, these analyses are necessarily fact intensive.  For instance, in

21  *Charas*, the Ninth Circuit considered how a variety of personal injury tort claims filed against an

22  airline would effect economic deregulation if the claims were allowed to proceed.  *Id.*  The

23  claims were brought by passengers who were injured when they tripped over luggage in the

24  aisle, were hit with a beverage cart or falling luggage, or fell because of the airline's refusal to

25  provide disembarking assistance.  *Id.*  In performing an in-depth assessment on the economic

26  impact, the court held that the tort claims were not preempted because they were too tenuously

27  related to "services" to have the necessary economic impact Congress was intending to prevent.

28  *Id.* at 1266.  Similarly, in *In re Air Transp. Excise Tax Litig.*, 37 F. Supp. 2d 1133, 1140 (D.

10

1   Minn. 1999), the court held that equitable and tort claims against FedEx for representing that its

2   rates included the excise tax and then collecting an amount equal to the expired tax were not

3   preempted. *Id.* at 1140.  The court explained that "the law of unjust enrichment, money had and

4   received, and conversion, unlike the airline advertising rules at issue in *Morales*, do not

5   affirmatively prescribe (or proscribe) the airlines' conduct in a way that impedes competition or

6   adversely impacts the economics of the airline industry." *Id.* at 1140.

7          Other examples of claims under state law which have been deemed not preempted by

8   federal law because they were too tenuously related to "price, route, or service" include:

9   (1) personal injury claims, *see, e.g., Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336-37 (5th Cir.

10  1995) (passenger sued for negligence because of injury from falling case of rum); (2) defamation

11  claims, *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) (travel

12  agency sued airline because it provided letter to agency passengers stating that tickets were

13  considered stolen); (4) false advertising claims, *Stephan v. Trans World Airlines, Inc.*, 730 F.

14  Supp. 366, 368 (D. Kan. 1990) (plaintiff sued under Kansas Consumer Protection Act claim

15  because TWA engaged in deceptive and unconscionable acts and practices in connection with

16  newspaper advertisements); and (5) discrimination claims, *see, e.g.*, *Wellons v. Northwest

17  Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999).

18         The lesson from these post-*Morales* cases, and particularly the Ninth Circuit's decision in

19  *Charas*, is that the line between preempted and non-preempted claims is between:  (1) those

20  which have the effect of interfering with the purpose of achieving economic deregulation

21  (preempted) and (2) those which bear too tenuous, remote or peripheral a relation to prices,

22  routes or services to have an adverse effect on competition (not preempted).  *In  re Air Transp.*

23  *Excise Tax Litig.*, 37 F. Supp. 2d at 1140.  "Such an interpretation is faithful to Congress's

24  deregulatory intent while avoiding the 'cavalier preemption' of a sovereign state's common law

25  causes of action." *Id.*  (citing *Charas*, 160 F.3d at 1264-65 (quoting *Medtronic*, 518 U.S. at

26  485)).  Moreover, a very recent Ninth Circuit case involving the ADA, confirms the *Charas*

27  framework.  *Montalvo*,  2007 WL 3311995, at * 8.  In *Montalvo* the Ninth Circuit explained that

28  "the Supreme Court has held preempted only state regulation that has a significant effect on

11

1   prices, routes, and services, because Congress' intent in deregulating the aviation industry was to

2   'encourage the forces of competition,' not to obviate all tort claims under state law that might in

3   some peripheral way impact the airlines." *Id.* Referencing *Charas*, the court stated in *Montalvo*

4   that "[w]e held that state claims that do not 'significantly impact federal deregulation' are not

5   preempted." *Id.* (citing *Charas*, 160 F.3d at 1265-66).

6           Several of the cases upon which UPS relies fall into the former preempted category

7   because they significantly impact economic deregulation and therefore directly relate to "price,

8   route, or service," where as here the claims do not, and are therefore are too tenuously related to

9   be preempted. *See United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 336 (1st Cir.

10  2003) (preempting Puerto Rico's requirement that carriers provide proof of excise tax payment,

11  the precise type of entry requirement Congress explicitly stated in the legislative history of the

12  FAAAA that it intended to prohibit because it hurts competition); *Rockwell v. United Parcel*

13  *Serv., Inc.*, No. 99-CV-57, 1999 WL 33100089, at * 3 (D. Vt. Jul. 7, 1999) (preempting

14  negligence claim for delivery of package containing pipe bomb because "[t]he impact on UPS, if

15  the duty demanded by [plaintiff] were imposed, would be enormous in both the  logistics of

16  providing its services and its pricing").

17          UPS also cites several pre-*Charas* cases which are thus unenlightening but, to the extent

18  they are considered on this motion, are distinquishable from *Charas* and the facts here because

19  the claims asserted would interfere with the purpose of economic deregulation. *See W. Parcel*

20  *Express v. United Parcel Serv. of Am., Inc.*, No. C 96-1526 CAL, 1996 WL 756858 (N.D. Cal.

21  Dec. 3, 1996) (preempting predatory pricing claims arising out of "tying" and "full line forcing"

22  practices because they interfere with economic deregulation by controlling price); *Carsten v.*

23  *United Parcel Serv. Inc.*, No. Civ. S-95-862 WBS-JFM, 1996 WL 335421, at *4 (E.D. Cal. Mar.

24  26, 1996) (preempting price discrimination claims because they regulate and control the prices

25  UPS may charge); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp.

26  665, 672 (N.D. Ga. 1997) (preempting tort claims arising from UPS's practice of overcharging

27  for package delivery because it interfered with UPS's ability to set its pricing practices); *Vieira*

28  *v. United Parcel Serv. Inc.*, No. C-95-04697 CAL ARB, 1996 WL 478686, at * 1 (N.D. Cal.

12

1  Aug. 5, 1996) (providing no in-depth analysis and concluding that tort claim for failure to deliver

2  jewelry preempted as relating directly to service).

3  The remaining cases to which UPS cites completely ignore the *Charas* framework and

4  were issued prior to *Montalvo*. *EIJ, Inc. v. United Parcel Serv., Inc.*, No. CV 03-7301 CBM

5  (JWJx), 2004 U.S. Dist. LEXIS 18481, at *18-21 (C.D. Cal. Sep. 8, 2004); *Holmstrom v. United*

6  *Parcel Serv., Inc.*, No. EDCV 02-00683-VAP (SGLx), 2002 U.S. Dist. LEXIS 26617, at *5

7  (C.D. Cal. Sep. 18, 2002); *In re EVIC Class Action Litig.*, No. 02-CV-2703 (RMB), 2002 WL

8  1766554, at *34-36 (S.D.N.Y. Jul. 31, 2002).  Consequently, they provide no guidance with

9  respect to analyzing whether a claim brought under state law would impact Congress' goal of

10 economic deregulation.

11 This Court's own precedent is, however, in line with the Ninth Circuit's framework set

12 forth in *Charas* and affirmed in *Montalvo*, even though issued prior to *Montalvo*.  In *Brownstein*

13 *v. American Airlines*, No. C-05-3435 JCS, 2005 WL 2988720 (N.D. Cal. Nov. 7, 2005), this

14 Court looked beyond the label of the causes of action in order to analyze the economic impact of

15 plaintiffs' state law consumer protection claims[3] that arose from the airline's passenger seating

16 policies.  *Id.* at * 6.  In so doing, the Court looked to another case involving an airline seating

17 policy which found that tort claims were preempted because plaintiffs effectively conceded  that

18 any seat reconfiguration necessary to provide more leg room would materially affect costs,

19 leading to a significant increase in airlines' prices.  *Id.* at *7 (citing *Witty v. Delta Airlines, Inc.*,

20 366 F.3d 380, 383 (5th Cir. 2004)).  Based on *Witty*, the Court held that plaintiffs' complaints

21 regarding seating policies were preempted as they would similarly impact the competitive

22 market for the airline.  *Id.*

23 That courts, including this one, have looked beyond the label of a cause of action to

24 assess the actual impact on economic deregulation is the only logical result given that Congress

25 surely did not pass the ADA and FAAAA to give carriers, such as UPS, "carte blanche to

26 convert property or unjustly enrich themselves willy-nilly, immunized from state law

27 

28 [3]    While Plaintiffs pled tort claims, the court only addresses preemption with respect to plaintiffs' claims brought under the UCL and Consumer Legal Remedies Act. *Brownstein*, 2005 WL 2988720, at *5-7.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. CV 07-04422-JCS

1   consequences." *In re Air Transp. Excise Tax Litig.*, 37 F. Supp. 2d at 1140.

2        Applying these principles to this case requires the conclusion that plaintiff's claims are

3   not preempted. Here, plaintiff alleges that UPS either intentionally or negligently promised and

4   represented to him and members of the Plaintiff Class that, upon payment of an additional fee, it

5   would acquire the signature of the recipient of a package in connection with its delivery. In fact,

6   it failed to consistently provide the promised service. Whether plaintiff's claims arising from

7   this conduct are preempted cannot be determined from the fact that they are labeled tort claims,

8   as even a cursory review of the above cases reveals that not all tort claims are preempted.

9   Likewise, the fact that plaintiff pleads consumer claims under the UCL based on UPS's tortious

10  conduct is not determinative. This Court should look beyond the labels of the claims to the state

11  law's impact on the economic deregulation of motor carriers, such as UPS.

12       Requiring UPS to provide the service for which it has been paid is far from economic

13  regulation. It is not an entry requirement or a price control, such as that shown by the legislative

14  history to be the target of Congress' enactment of the statute. In that vein, it is not possible that

15  the misrepresentations of the sort alleged here are considered a legitimate means of competition

16  within the industry. Further, to the extent such conduct may occur, it certainly is not the type of

17  competition the FAAAA was intended to foster or protect. In short, enforcement of state law

18  with respect to the circumstances presented here will have "too tenuous, remote, or peripheral"

19  an effect on "price, route or service" to justify preemption. *See Morales*, 504 U.S. at 390.

20   **C.    Because None of Plaintiff's Claims are Preempted, His Claims For Damages
           Should Not Be Dismissed.**

21

22       UPS mistakenly assumes that all of plaintiff's claims, but for the breach of contract

23  claim, will be dismissed and that breach of contract claims are limited in relief to the four

24  corners of the contract. (Def.'s MPA at 14:12-16.) UPS therefore urges that plaintiff's damages

25  and equitable relief claims should be dismissed. However, in the cases UPS cites regarding

26  damages, the state tort law claims were actually dismissed or there were no tort claims from the

27  outset. *See, e.g.*, *Carsten*, 1996 WL 335421, at * 4 (dismissing damages claims because price

28  discrimination tort claims were preempted given that plaintiffs sought to regulate defendant's

1  pricing scheme); *Power Standards Lab, Inc., v. Fed. Express Corp.*, 127 Cal. App. 4th 1039,

2  1047 (2005) (not allowing punitive damages for breach of contract claim).  Several courts have

3  recognized that damages outside those provided for in a contract are allowed where the

4  underlying claim is not preempted.  *See In re Air Crash Disaster at Stapleton Int'l Airport*, 721

5  F. Supp. 1185, 1187 (D. Colo. 1988); *In re Air Crash Disaster at Sioux City, Iowa*, 734 F. Supp.

6  1425, 1428 (N.D. Ill. 1990); *Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 251-52

7  (S.D.N.Y. 1997).  Therefore, because none of plaintiff's claims are preempted, neither are his

8  claims for damages and other equitable relief.

9  **II.    THE 180-DAY NOTICE REQUIREMENT DOES NOT APPLY TO PLAINTIFF'S**
   **CLAIMS AND, EVEN IF APPLICABLE, WOULD ONLY BAR AN**
10 **UNDETERMINED PORTION OF HIS CLAIMS.**

11      UPS attempts to avoid liability for its gross misrepresentations and charges for services it

12 did not provide by arguing that plaintiff cannot dispute the validity of UPS's invoices because he

13 allegedly failed to notify UPS within 180 days from receiving the invoice that he was contesting

14 the charges.  UPS contends that 49 U.S.C. § 13710(a)(3)(B) and the UPS shipping contract

15 required plaintiff to do so.  UPS's arguments are both legally and factually incorrect.  The

16 180-day statutory provision simply does not apply here because analysis of the statutory

17 framework and language demonstrate that the provision was intended to apply only to disputes

18 over the applicability or reasonableness of a carrier's rate brought before the Surface

19 Transportation Board in an administrative proceeding, *not* to disputes in courts regarding charges

20 for services not provided.  Further, plaintiff properly pled in its complaint that it satisfied all

21 conditions of the contract.  However, to the extent the Court believes either of these notice

22 provisions apply they would, at most, limit plaintiff's claims, not eliminate them.  The extent of

23 that limitation is a fact intensive inquiry, based on when plaintiff's claims arose and whether and

24 when he gave notice, that cannot be determined on the pleadings.

25      **A.    The 180-day Statutory Notice Provision is Inapplicable Where, As Here, the**
        **Forum is a Court Rather than An Administrative Body.**
26

27      The statute upon which UPS relies, 49 U.S.C. § 13710(a)(3)(B), does not apply to state

28 causes of action for which relief is sought in a judicial action.  The context of the statutory

1   language demonstrates that the 180-day notice provision was intended only to apply to

2   administrative actions before the regulatory agency, the Surface Transportation Board ("Board"),

3   concerning the billing disputes.  The 180-day notice provision specifically provides that "[i]f a

4   shipper seeks to contest the charges originally billed or additional charges subsequently billed,

5   the shipper may request that the Board determine whether the charges billed must be paid.  A

6   shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in

7   order to have the right to contest such charges."  49 U.S.C. § 13710(a)(3)(B).  The juxtaposition

8   of the latter sentence, immediately following the provision authorizing a shipper to seek a

9   determination from the Board, indicates that the 180-day notice provision applies only to Board

10  determinations.  Where the dispute involves shipments made pursuant to a contract, the courts'

11  exclusive jurisdiction applies.  *See* 49 U.S.C. § 14101(b)(2).  Because the Board cannot hear the

12  dispute, there is no reason for the shipper to contest the charges within 180 days.  Simply put,

13  section 13710(a)(3)(b) does not apply to disputes that arise outside the jurisdiction of the Board.

14          UPS's argument that the 180-day notice provision does apply is based on various non-

15  binding declaratory orders from the Board.  (Def's MPA at 20:5-21:4.)  In these decisions, the

16  Board unequivocally deferred to the courts for the determination of whether the notice provision

17  applies outside Board proceedings, stating that "our purpose in issuing [the declaratory order in

18  *Carolina Traffic Services*], and in issuing this decision, is merely to provide our opinion

19  regarding Congressional intent in enacting the 180-day rule.  Our role regarding motor carrier

20  regulation . . . is quite limited. . . . [I]t is ultimately up to the courts to apply the 180-day-rule in

21  individual cases."  *Nat'l Ass'n of Freight Transp. Consultants, Inc. - Pet. for Declaratory Relief*,

22  STB No. 41826, 1997 WL 189658, at *4 (April 21, 1997) (hereafter "*NAFTC*").  Such deference

23  is not merely appropriate, but is mandated by *United States v. Mead Corp.*, 533 U.S. 218, 222

24  (2001) and its progeny.  Where, as here, there is "no indication that Congress intended such a

25  ruling to carry the force of law. . . the ruling is eligible to claim respect according to its

26  persuasiveness."  *O'Shaughnessy v. Comm'r Int. Rev.*, 332 F.3d 1125, 1130 (8th Cir. 2003)

27  (citing *Mead Corp.,* 533 U.S. at 221, other internal citation omitted).  The Board's opinion,

28  therefore, should claim the Court's respect only to the extent that it was persuasively reasoned.

16

1   As explained below, the Board's interpretation of section 13710(a)(3)(B) is not persuasive

2   because it violates fundamental principles of statutory interpretation and therefore should not be

3   adopted by this Court.

4          In its analysis of section 13710(a)(3), the Board failed to observe three basic rules of

5   statutory construction:  (1) that the provisions of a statute should be construed as a whole;

6   (2) that one provision should not be construed in a manner that would conflict with other

7   statutory provisions; and (3) provisions which would work forfeiture of a right should be

8   construed narrowly.  Applying these basic rules of statutory construction, it is clear that section

9   13710(a)(3)(B) applies only to the right created under section 13710(a)(3)(B) and not to other

10  rights of a shipper.

11         First, it is a fundamental canon of statutory construction that the words of a statute must

12  be read in context and with a view to their place in the overall statutory scheme.  *Davis v. Mich.*

13  *Dept. of Treasury*, 489 U.S. 803, 809 (1989).  Except for the rhetorical device of isolating the

14  phrase describing the shipper's "right to contest" from the first sentence of section

15  13710(a)(3)(B), the Board's *Carolina Traffic Servs., Inc. of Gastonia - Pet. for Declaratory*

16  *Order*, STB No. 41689, 1996 WL 303722, at *2-3 (May 31, 1996), decision provided no

17  justification for construing the 180-day notice provision to apply broadly to common law rights

18  of action, rather than the specific right created under section 13710(a)(3)(B), *i.e.*, the right of a

19  shipper who "seeks to contest" rate reasonableness and applicability[4] to have "the Board

20  determine whether the charges billed must be paid."  The Board's isolation of discrete phrases

21  containing the word "contest" in the *NAFTC* decision likewise ignores the "fundamental

22  principle of statutory construction (and, indeed, of language itself) that the meaning of a word

23  cannot be determined in isolation, but must be drawn from the context in which it is used."  *Deal*

24  *v. United States*, 508 U.S. 129, 132 (1993).

25         Read in context and with a view to its place in the overall statutory scheme, the plain

26  meaning of section 13710(a)(3)(B) is abundantly clear:  a shipper may seek a determination by

27

28  [4]     *See* Section II(b), *supra*, explaining that "billing disputes" means rate disputes (*e.g.*, reasonableness and applicability of rates), not disputes over paid-for-services that were not provided.

17

1    the Board with respect to contested reasonableness or applicability of a rate, but must contest the

2    charges within 180 days of receipt of the bill in order to exercise the right to a determination by

3    the Board.  The statute thus places no limitation on the right to file a judicial action which does

4    not involve the reasonableness or applicability of a rate.

5          This common-sense interpretation of the statutory language is buttressed by the fact that

6    the statute makes the Board not merely an alternative forum for contract-based disputes, but the

7    only forum for consideration of claims implicating the vestigial authority of the Board over rate

8    reasonableness and applicability.  49 U.S.C. §§ 13710(a)-(b); *Carolina Traffic Servs., Inc.*, 1996

9    WL 303722, at *1 (stating that section 13710(a) protects Board's primary jurisdiction over rate

10   applicability issues and Board's exclusive jurisdiction over rate reasonableness determinations).

11   The 180-day notice provision thus serves as a "winnowing" mechanism for all proceedings

12   utilizing the Board's limited resources.  Such a "winnowing" mechanism is neither necessary nor

13   appropriate, though, for actions brought before the courts that do not involve the reasonableness

14   or applicability of a rate.

15         Second, read in conjunction with other relevant statutory provisions, it is clear that the

16   180-day notice provision was not intended to modify a shipper's common law right to enforce a

17   contract.  With respect to contracts between a shipper and a motor carrier, "[t]he exclusive

18   remedy for any alleged breach of contract entered into under this subsection shall be an action

19   before an appropriate State court or United States district court, unless the parties otherwise

20   agree."  49 U.S.C. § 14101(b)(2).  In other words, the Board generally has no remedial power

21   with respect to contract enforcement.  The remedial power of the courts described in section

22   14101(b)(2) is unrestricted and there is no reason to refer to the miscellaneous provisions in

23   section 13710 to understand or to limit in any way such court powers or a litigant's access to

24   judicial enforcement of a contract.  With respect to the Board hearing authorized in section

25   13710(a)(3), the statute also unequivocally states that "the remedies provided under this part are

26   in addition to remedies existing under another law or common law."  49 U.S.C. § 13103. These

27   statutory provisions should be read as a whole and not (as the Board did) in isolation.  *See*

28   *United States v. Morton*, 467 U.S. 822, 828 (1984) (stating that "[w]e do not . . . construe

18

statutory phrases in isolation; we read statutes as a whole"). So read, it is clear that section

13710 and its time limitations must be construed as involving only the shipper's right to a

hearing before the Board, having no applicability to individual actions.

Third, when either of two constructions can be given to a statute, and one of them

involves a forfeiture, the other is to be preferred. *Farmers' & Mechanics' Nat'l Bank v.*

*Dearing*, 91 U.S. 29, 35 (1875). Contrary to this rule, the Board construed section

13710(a)(3)(B) to forfeit a shipper's common law right of action if the shipper failed to meet a

condition precedent. As shown above, section 13710(a)(3)(B) need not be read to impose

additional conditions on common law right or to forfeit the remedy of judicial enforcement of

contracts available under section 14101(b)(2). Read as a whole with other statutory provisions,

section 13710's 180-day notice provision should not work a forfeiture of common law rights, but

would serve to preserve administrative resources devoted to challenges of rate applicability and

reasonableness, neither of which are at issue here. The 180-day notice provision set forth in

section 13710(a)(3)(B) should be construed to apply only to the right of a shipper to seek

determinations by the Board under section 13710(a)(3) and should not be construed to apply to

the remedy of judicial enforcement available under section 14101(b)(2).

In view of the inapplicability of the Board's unpersuasive opinions, UPS fails to cite a

single case wherein a court adopted the 180-day notice provision. This is because, in the sparse

case law that does exist, courts have disagreed with the Board's guidance regarding application

of the 180-day notice provision to state claims filed in court rather than before the Board. For

example, in *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284 (D. Md.

2003), the plaintiff sued ABF in state court for intentional and negligent misrepresentation,

unjust enrichment, and breach of contract because ABF charged a higher rate to the furniture

shipper than what it orally agreed to charge. *Id.* at 285. The defendant filed a motion to dismiss

arguing that the shipper failed to comply with the 180-day notice provision. *Id.* The court

rejected this argument because the "interpretation of the 'bargain of the parties' is guided by

Maryland contract law" and the 180-day notice provision "cannot be imposed upon actions to

enforce a contract under Maryland law." *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. CV 07-04422-JCS

350 F. Supp. 2d 686, 691, 694 (D. Md. 2004). The Board's interpretation should not be adopted here given the absence of court authority adopting the position taken by the Board, the Board's own caveat that application of the notice provision is left to the discretion of courts, and the numerous violations of statutory construction that the Board committed in its reasoning regarding application of the 180-day notice provision in a court.

### B. The 180-day Statutory Notice Provision is Also Inapplicable Here Because Plaintiff's Claim Does Not Arise From a Dispute Over a Rate UPS Charges For a Service.

Even if this Court adopts the 180-day notice provision, Congress did not intend for this provision to apply to the types of claims before this Court. The shipments at issue here were made pursuant to the parties' contract – a contract which UPS failed to fulfill when it did not provide a service for which plaintiff paid. In contrast, the 180-day notice provision provided in section 13710(a)(3)(B) applies *only* to "billing disputes." In the rare circumstances where courts have applied the 180-day notice provision, they have interpreted billing disputes to involve defendant's improper application of, or reasonableness of, independently determined rates. *See, e.g.*, *Avery Dennison Corp.*, 2006 WL 3350761, at *6. In *Avery Dennison*, the court applied the 180-day notice provision to bar plaintiff's claims arising from a dispute over a pricing agreement, wherein the parties agreed to a particular rate and just weeks after that agreement, defendant charged higher rates than those upon which the parties agreed. *Id.* Courts have not, however, interpreted the wholesale failure to provide a paid-for service and related misrepresentations as constituting "billing disputes."

Various statements issued by the Interstate Commerce Commission ("ICC") and the Surface Transportation Board ("Board") support the position that the term "billing disputes" in the 180-day notice provision is very narrowly focused on rate disputes. In a 1994 policy statement, the ICC addressed the resolution of billing disputes under the newly enacted legislation that eliminated filed tariff requirements: "[o]ther provisions of section 206 [codified in section 13710] create a new, simplified regime for settling any disputes concerning the applicability or reasonableness of independently determined rates." Policy Statement on the Trucking Industry Regulatory Reform Act of 1994, 10 I.C.C. 2d 251, 1994 WL 580904, at *3

20

1   (Oct. 20, 1994) (emphasis added).  It further provides "[a] new 180-day period is established for

2   the shipper to contest the *rate* or the carrier to issue a bill for charges in addition to those

3   originally billed."  *Id.* (emphasis added).  Thus, billing disputes under section 13710(a)(3)(B)

4   deal only with issues related to the applicability of a carrier's specific rate to a given commodity

5   or the reasonableness of the rate established in such a tariff.  This case does not involve a billing

6   dispute.  It does not entail a disagreement over an agreed upon rate for the signature delivery

7   service.  Rather, it arises from UPS's failure to provide the promised service at all once it was

8   requested and paid for.

9       C.   **UPS's Motion Based on the 180-day Contractual Notice Provision Must Be
             Denied Because It Improperly Relies Upon Extraneous Documents Which
10           Are Neither Relied Upon by Plaintiff Nor Integral to Their Claims.**

11      UPS also argues that plaintiff's claims are time barred because UPS's self-imposed

12   contractual notice provisions apply and plaintiff allegedly did not satisfy those provisions.  In

13   support of its argument, UPS asks the Court to consider documents outside the pleadings which

14   it purports constitute the contract.  (Decl. of AnneMarie O'Shea in support of Def.'s Mot. for

15   Judgment on the Pleadings ("O'Shea Decl."), Exs. A-E.)  By presenting the Court with these

16   documents, UPS has introduced new and extraneous evidence for the very purpose of

17   establishing an alleged fact beyond those stated in the Complaint.  Pursuant to the Federal Rules

18   of Civil Procedure, rule 12(c), a court may elect either to exclude the "matters outside the

19   pleadings" or, if it considers them, convert the motion to a motion for summary judgment.

20   *Grove v. Mead Sch. Dist. No.* 354, 753 F.2d 1528, 1532-33 (9th Cir. 1985)[5].

21      The Court should exclude the matters outside the pleadings, here Exhibits A through E

22   attached to the O'Shea Declaration, because none of the exhibits are referred to in the Complaint

23   or relied upon by plaintiff in asserting his claims for relief in this action.  To the contrary,

24   plaintiff's claims are based exclusively upon the contract formed by the shipping record books

25   and the forms therein that plaintiff completed and provided to UPS with each package UPS

26

27   _____

    [5]    Plaintiff has filed a separate motion objecting to and requesting exclusion of matters outside the
28   pleadings submitted by UPS.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. CV 07-04422-JCS

accepts for delivery. (Compl. ¶¶ 15-16, 39-42.) Plaintiff performed all of its obligations under its contractual agreement with UPS, including paying all amounts invoiced by UPS on its account, including amounts attributable to the additional service of obtaining proof of delivery with the signature of the recipient. (*Id.* at ¶ 44.) Plaintiff has thus stated a claim on which relief can be granted on the face of the Complaint and none of the extraneous exhibits submitted by UPS should be considered.[6]

Moreover, even if the Court considers the extraneous documents, they do not govern the claims plaintiff raises here. Specifically, plaintiff seeks relief for UPS's failure to provide delivery confirmations for packages it shipped. This relief does not fall within the precise notification language regarding invoice adjustments and refunds on duplicate payments set forth in the "terms and conditions" UPS submitted in Exhibits A through E of the O'Shea Declaration.

**D.     It is Premature to Determine the Extent to Which the Claims Are Not Barred Even if a 180-day Notice Provision Applies.**

Even if the 180-day notice provision somehow applies to the action here, it would only limit, not eliminate, plaintiff's claims. The extent to which such claims are limited requires a fact intensive inquiry that cannot be based on the pleadings. Specifically, each shipment for which UPS failed to acquire a signature constitutes a separate breach and each such breach triggers a separate notice period. *See Unimac Co., Inc. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434, 1436 (11th Cir. 1995) (where two shipments used separate bills of lading and traveled on

---

[6] The cases UPS cites to support its argument that the 180-day contractual notice provision applies here are all based on the undisputed fact that the contract at issue contained the notice provision and that plaintiff's claims were, in fact, governed by the notice provision. *See Barber Auto Sales, Inc. v. United Parcel Servs., Inc.*, 494 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007) (holding that the contract included the "Carrier Agreement, which expressly incorporates the UPS General Tariff, addenda to the UPS General Tariff, and the UPS Rate and Service Guide" and that it required 180 day notice for billing disputes); *Taisho Marine & Fire Ins. Co., Ltd. v. The Vessel "Gladiolus,"* 762 F.2d 1364, 1368 (9th Cir. 1985) (holding that the cargo was carried under the terms and conditions of an ocean bill of lading issued by the ocean carrier, which incorporated a notice provision); *Williams v. Fed. Express Corp.*, No. CV 99-06252 MMM BQRX, 1999 WL 1276558, at * 3-4 (C.D. Cal. Oct. 6, 1999) (holding that the plaintiff's shipment traveled under FedEx USA Airbill, which notified the plaintiff on both the front and back that it incorporated the provisions of the June 1995 FedEx Service Guide). Here, however, the Complaint asserts a contractual agreement different than that argued by UPS. Given that, on a motion for judgment on the pleadings, the Court must accept the facts in the Complaint in the light most favorable to plaintiff, and that UPS improperly submitted extraneous documents not relied upon by plaintiff, these cases are inapposite.

22

separate vessels on separate days, court upheld trial court's finding that first shipment was barred by one-year statute of limitations while second shipment was not). If claims based on some of the earlier shipments were barred for failure to provide notice within 180 days, other claims could remain and discovery must be conducted to determine which claims plaintiff gave notice and would therefore remain.

Moreover, UPS's assertion that the 180-day notice provision requires written notice is unsupported. As the Board observed in NAFTC, the statute "does not specify the manner of notification." *NAFTC*, 1997 WL 189658, at *5. The Board's opinion was not directed to the manner of notification, but to the timing, stating that notification would be effective if given by fax or mail posted or sent on the 180th day. *Id.* There is nothing in section 13710 or the Board's opinion to require that notification be provided in writing.

Whether notice was given, precisely when notice was given, the sufficiency of that notice, and which invoices were rendered within 180 days of that notice are all factual inquiries that cannot be decided based upon the complaint. In light of the numerous factual questions that cannot be determined based on the pleadings, the motion would have to be denied even if the 180-day notice provision (statutory or contractual) applied because a motion for judgment on the pleadings can be granted only if the complaint states no basis for recovery.

## III. DEFENDANT'S ARGUMENT THAT PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE TIME-BARRED IS NO MORE AVAILING WHEN BASED ON THE 18-MONTH STATUTE OF LIMITATIONS.

UPS also asserts that plaintiff's claims for breach of contract are time barred under a federal statute of limitations that does not apply. The statute of limitations upon which UPS relies provides, in relevant part, that "[a] person must begin a civil action to recover *overcharges* within 18 months after the claim accrues." 49 U.S.C. § 14705(b) (emphasis added). Plaintiff's claim falls outside the statutory and regulatory definitions of an "overcharge" and therefore it is not time barred by the statute of limitations. Under 49 C.F.R. § 378.2, which covers the filing and processing of overcharge claims, a motor carrier overcharge is identified as one defined in 49 U.S.C. § 14704(b). That provision states that a motor carrier is liable for charging an amount that exceeds the applicable rate contained in a tariff in effect under 49 U.S.C. § 13702.

1    However, section 13702 applies *only* to tariffs for the transportation of household goods and for

2    shipments moving in the noncontiguous domestic trade, neither of which are at issue here.

3         "Household goods" include those goods transported by residential moving companies.

4    This is made clear by the definition of "household goods motor carrier" as "a motor carrier that,

5    in the ordinary course of its business of providing transportation of household goods, offers

6    some or all of the following additional services: (i) Binding and non-binding estimates[,]

7    (ii) Inventory[,] (iii) Protective packing and unpacking of individual items at personal

8    residences[, and] (iv) Loading and unloading at personal residences."  49 U.S.C. §

9    13102(12)(A).  "Shipments moving in the noncontiguous domestic trade" include only those

10   shipments handled jointly by water and motor carriers.  *See* 49 U.S.C. §§ 13702(a)(b) & (c).

11   Given that plaintiff UPS is not a moving company and does not ship plaintiff's products via

12   water, he has not alleged a claim related to "household goods" or "shipments moving in

13   noncontiguous trade."       Additionally, the cases cited by UPS make clear that plaintiff's

14   claims are distinguishable from "overcharge" claims subject to the 18-month statute of

15   limitations.  For instance, in *Barber Auto Sales*, the dispute related to the appropriateness of the

16   charge.  494 F. Supp. 2d at 1295.  That is, the shipper alleged that UPS manipulated the package

17   audit procedures by charging for shipment of packages based on two separate pricing

18   methodologies (dimensional weight and actual weight), and consequently improperly invoiced

19   plaintiff.  *Id.*  Here, however, plaintiff does not argue that he was charged the wrong price, but

20   rather that he paid for a service he never received.   For the foregoing reasons, his claims are not

21   claims for "overcharges" and are not subject to 49 U.S.C. § 14705(b) governing "overcharge"

22   claims.  Instead, the California statute of limitations applies.  Thus, the applicable statute of

23   limitations for breach of contract claims is four years.  Cal. Civ. Proc. Code § 337.  Plaintiff has

24   explicitly pled his claims in a manner sufficient to meet this statute of limitations and therefore

25   has stated a basis for recovery sufficient to overcome a motion for judgment on the pleadings.

26   //

27   //

28   //

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. CV 07-04422-JCS

1

## CONCLUSION

2      For the reasons argued above, plaintiff submits that Defendant's Motion for Judgment on

3   the Pleadings should be denied on each of the grounds on which it is based.

4

5    Date: November 30, 2007                    Respectfully submitted,

6                                              THE STURDEVANT LAW FIRM
                                               A Professional Corporation

7
                                               HEDANI, CHOY, SPALDING
8                                               & SALVAGIONE, LLP

9                                         By: /s/  Mark T. Johnson
                                               MARK T. JOHNSON
10                                             Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28